# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD W. QUEER, )
)   Civil Action No. 08 – 493
Petitioner, )
)
v. )   Chief Magistrate Judge Lisa Pupo Lenihan
)
RANDALL E. BRITTON, )
*Superintendent*, THE ATTORNEY )
GENERAL OF THE STATE OF )
PENNSYLVANIA, and THE )
DISTRICT ATTORNEY OF THE )
COUNTY OF WESTMORELAND, )
)
Respondents. )

## MEMORANDUM OPINION

Donald W. Queer ("Petitioner"), a state prisoner incarcerated at the State Correctional Institution at Houtzdale, has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court finds that Petitioner is entitled to relief on his claim that his counsel was ineffective for failing to file an appeal. The Court will grant the relief sought.

## I.       Factual and Procedural History

The following is a summary of the lengthy, and somewhat convoluted, history of Petitioner's state court criminal and post-conviction proceedings.

Petitioner was charged with arson and other related offenses in four separate criminal informations in Westmoreland County at case numbers 292 C 2000 ("Piper fire"), 293 C, 2000

("Auto Haven fire"), 294 C 2000 ("Loveridge fire"), and 519 C 2000 ("Conn fire").[1] All four

cases were consolidated for trial along with the five cases of his co-defendant, David Ferguson.

Judge Blahovec presided over a jury trial that began on May 29, 2001 and concluded on June 7,

2001. At trial Petitioner was represented by Attorney Christopher Feliciani. The jury acquitted

Petitioner of the charges stemming from the Conn fire but found him guilty on all counts at the

other three cases. Sentencing occurred on September 12, 2001, and Petitioner was sentenced to

an aggregate term of imprisonment of 29 years and 4 months to 58 years and 8 months.

    At sentencing Petitioner made an oral motion for the appointment of new counsel for

purposes of appeal. Before granting this motion, the trial court ordered Attorney Feliciani to file

post-sentence motions to toll the appeal statute. Post-sentence motions were filed on September

14, 2001.

    On October 17, 2001, Attorney Ron E. Valasek was appointed to represent Petitioner for

post-sentence proceedings. The court instructed Attorney Valasak to file supplemental post-

sentence motions within twenty days. When that time expired, and the motions had not yet been

filed, the court entered an order reminding counsel of the 120-day time limit to file the motions

---

[1]     At case 292 C 2000, Petitioner was charged with three counts of arson in violation of 18 Pa.C.S.A. §§ 3301(a)(1)(i), (a)(1)(ii), and (c)(2); one count of criminal conspiracy in violation of 18 Pa.C.S.A. § 903(a)(1); two counts of recklessly endangering another person in violation of 18 Pa.C.S.A. § 2705; and one count of criminal mischief in violation of 18 Pa.C.S.A. § 3304(a)(1). The charges stemmed from a house fire in Cook Township, Latrobe, Wastmoreland County on February 29, 1999.

        At case 293 C 2000, Petitioner was charged with three counts of arson in violation of 18 Pa.C.S.A. §§ 3301(a)(1)(i), (d)(1), and (d)(2); one count of criminal mischief in violation of 18 Pa.C.S.A. § 3304(a)(1); and one count of criminal solicitation in violation of 18 Pa.C.S.A. § 902(a). The charges stemmed from a fire at the Auto Haven, Inc. located on State Route 30 in Derry Township in Westmoreland County on March 14, 1999.

        At case 294 C 2000, Petitioner was charged with four counts of arson in violation of 18 Pa.C.S.A. §§ 3301(a)(1)(i), (a)(1)(ii), and (c)(2); and one count of criminal solicitation in violation of 18 Pa.C.S.A. § 902(a). The charges stemmed from a mobile home fire in Derry Township, Westmoreland County on April 9, 1999.

        At case 519 C 2000, Petitioner was also charged with arson related offense but was found not guilty on these charges.

imposed by Pennsylvania Rule of Criminal Procedure 720(a), and again ordered counsel to submit to the court supplemental motions and an accompanying brief. The 120-day time limit expired without Attorney Valasek submitting supplemental motions. The original post-sentence motions filed by Attorney Feliciani were denied by the court on January 14, 2002.

Prior to the denial of the post-sentence motions, Petitioner wrote to Attorney Valasek asking that he file supplemental post-sentence motions and an appeal on his behalf. This letter was dated November 7, 2001. After receiving no response from Attorney Valasek, and presumably not having received notice that his post-sentence motions had already been denied, Petitioner wrote to Judge Blahovec on January 23, 2002, complaining that Attorney Valasek never contacted him despite several letters he had written to him and that his family's attempts to contact him by phone were unsuccessful. In the letter, Petitioner stated that he wanted to file supplemental post-sentence motions to challenge several issues. Judge Blahovec forwarded the letter to Attorney Valasek asking that he contact his client.

No direct appeal was ever filed so Petitioner's judgment of sentence became final on February 13, 2002, thirty days after his post-sentence motions were denied.

Petitioner avers that, on or about May 20, 2002, he wrote to the Westmoreland County Clerk of Court requesting to know the status of his case.[2] In response he received a copy of his docket sheet and noticed the court's docket entry entered on January 14, 2002, which read as follows:

|          |                   |     |
|----------|-------------------|-----|
| 1/14/2002 | OPINION & ORDER<br>NEXT ENTRY | KS |
| 1/14/2002 | ORDER OF COURT    |     |

---

[2] The trial court's docket sheet does not reflect that Petitioner sent correspondence to the court in May 2002.

Petitioner allegedly asked several people working at the prison law library what the entry meant and he was told that it meant his appeal had been denied.  Because of this, Petitioner allegedly believed that Attorney Valasek had filed the appeal and that it had been denied.

On July 1, 2002, Petitioner filed his first Motion for Post-Conviction Relief pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA").  The PCRA court again appointed Attorney Valasek to represent Petitioner and instructed counsel to file an amended PCRA petition.  Counsel filed an amended PCRA petition on September 6, 2002, raising four claims of ineffective assistance of trial counsel, one claim of trial court error, and a claim that Petitioner's sentence was excessive.

An evidentiary hearing was scheduled for November 18, 2002, but Attorney Valasek presented no testimony or evidence in support of Petitioner's claims.  Instead, he simply requested time to submit a brief in support of the petition, which was granted.  By opinion and order dated February 24, 2003, the court denied the PCRA petition.  The Pennsylvania Superior Court affirmed the denial of PCRA relief on April 7, 2004, and Petitioner did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

Petitioner filed a second PCRA petition on August 10, 2004.[3]   After reviewing the petition, the PCRA court appointed Attorney Emily Smarto to represent Petitioner for those proceedings.  A hearing on the petition was held on February 1, 2005.

---

[3]          This is what the parties are referring to as Petitioner's second PCRA petition.  However, while the appeal of his first PCRA petition was still pending, Petitioner submitted a *pro se* letter to the trial court on April 14, 2003, which the court also construed as a PCRA petition.  That petition was dismissed on April 21, 2003 because the denial of Petitioner's first PCRA petition was still pending on appeal.  In addition to that petition, Petitioner filed a motion on April 29, 2003, which appears to have also been construed as a PCRA petition but was dismissed for the same reason on May 6, 2003.

At this hearing, Attorney Valasek was called to testify as to his representation of Petitioner in his first PCRA proceedings. He did not testify as to his representation of Petitioner on direct appeal. Also called to testify at the hearing was Petitioner's trial counsel, Attorney Feliciani. At the hearing, the Commonwealth argued that Petitioner's second PCRA petition was untimely, and, despite Judge Blahovec's statement that it was just "easier" to rule on the merits of the petition rather than find it untimely, he did in fact dismiss it as untimely on March 22, 2005. It was also at this hearing that Petitioner allegedly first learned that Attorney Valasek had never filed a direct appeal as he was led to believe by the January 14, 2002 entry on the court's docket. According to Petitioner, Judge Blahovec informed Attorney Smarto that this issue would have to be raised in a third PCRA petition.

Instead of appealing the PCRA court's order, Petitioner filed a third PCRA petition on April 11, 2005, requesting that his appeal rights be reinstated because Attorney Valasek was ineffective for failing to file an appeal when Petitioner requested that he do so.[4] An evidentiary hearing was held on August 3, 2005.

The hearing lasted not more than five minutes and it concluded with the court granting the requested PCRA relief and reinstating Petitioner's direct appeal rights *nunc pro tunc*. Petitioner was given thirty days to file his direct appeal and Attorney Smarto filed a timely appeal on his behalf.

On October 3, 2005, the trial court issued its Rule 1925(a) Opinion finding that Petitioner's direct appeal lacked merit. However, on May 17, 2006, the Pennsylvania Superior Court quashed Petitioner's direct appeal and vacated the PCRA court's order that had reinstated

---

[4] In June 2005, Petitioner filed a *pro se* application to file an appeal *nunc pro tunc*, which the trial court denied because Petitioner's third PCRA petition, which was still pending, dealt with the same issue.

Petitioner's direct appeal rights. The Superior Court found that Petitioner's third PCRA petition was untimely filed. Thus, the PCRA court was without jurisdiction to consider it and could not grant the requested relief. The Pennsylvania Supreme Court denied Petitioner's petition for allowance of an appeal on September 29, 2006.

Petitioner filed a fourth PCRA petition on November 8, 2006. This time, counsel was not appointed. The PCRA court issued its notice of intent to dismiss the petition on November 29, 2006, stating that the petition was untimely and that Petitioner did not meet any of the enumerated exceptions to the PCRA timeliness requirement found at 42 Pa.C.S.A. §§ 9545(b)(1) and (2).[5] By order dated December 18, 2006, the fourth PCRA petition was dismissed. Petitioner appealed.

The PCRA court issued is Rule 1925(a) Opinion on January 9, 2007, and by order dated December 12, 2007, the Pennsylvania Superior Court affirmed the dismissal of Petitioner's fourth PCRA petition. It concluded that the PCRA court had properly held that the petition was untimely and that no exception to the time-bar applied to salvage the matter from its untimeliness. Notably, in that appeal, Petitioner argued that the PCRA court had erred in dismissing the petition on the basis of untimeliness because he had been under the erroneous impression, at least until February 1, 2005, that a direct appeal had been filed on his behalf and that an entry on the trial court's docket further misled him in that mistaken belief. The Superior Court found that even accepting February 1, 2005 as the date Petitioner first learned that no direct appeal had been filed, which was the date his claim first could have been presented, the

---

[5]      These exceptions are (1) interference by government officials in the presentation of the claim; (2) previously unknown facts despite the petitioner's exercise of due diligence; and (3) recognition of a new constitutional right. 42 Pa.C.S.A. §§ 9545(b)(1)(i)-(iii). Any petition invoking one of these exceptions must be filed within sixty days of the date the claim could have been presented. Id. at § 9545(b)(2).

fourth PCRA petition was still untimely because it was not filed within sixty-days thereof.[6] Petitioner did not file a petition for an allowance of appeal.

Petitioner initiated the instant habeas corpus proceedings on April 1, 2008.[7] After Respondents filed their answer on September 25, 2008, Petitioner filed a motion to stay these proceedings so that he could return to the state court to file additional matters. That request was granted and this case was administratively closed on July 28, 2009.

During that time, Petitioner filed a petition with the Pennsylvania Superior Court for leave to appeal *nunc pro tunc*. The Superior Court denied the petition on April 27, 2009, albeit without prejudice so that Petitioner could continue to seek the requested relief in the trial court.

On May 12, 2009, Petitioner returned to the trial court and filed a petition to file supplemental post-sentence motions and to appeal *nunc pro tunc*. The court construed the petition as a fifth PCRA petition, and, once again, dismissed it as untimely. Interestingly, the PCRA court stated that it believed Petitioner's direct appeal rights should be reinstated but it could not grant him the requested relief because it had done so already and the Superior Court quashed his reinstated appeal. It further stated that Petitioner did not meet an exception to the PCRA timeliness requirement but did not elaborate as to why.

The Superior Court affirmed on December 9, 2010, finding that Petitioner had failed to explicitly plead and prove a time-bar exception. In reference to Petitioner's argument that the

---

[6]     As explained *infra*, this Court believes this finding is incorrect.

[7]     This is the filing date under the "mailbox rule." Pennsylvania and federal courts employ the prisoner mailbox rule. *See* Perry v. Diguglielmo, 169 Fed. Appx. 134, 136 n.3 (3d Cir. 2006) (citing Commonwealth v. Little, 716 A.2d 1287 (Pa. Super. Ct. 1998)); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998). Under this doctrine, a prisoner's *pro se* pleading is deemed filed when delivered to prison officials for mailing. *See* Houston v. Lack, 487 U.S. 266 (1988). *See also* Burns, 134 F.3d at 113; Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa. Super. Ct. 2001) (deemed filed when given to proper prison authority or placed in a prison mailbox).

trial court's docket sheet misled him into believing that an appeal had been filed on his behalf, and had been denied, the Superior Court again relied upon its previous finding that Petitioner had not demonstrated why he did not or could not have raised these allegations within sixty-days of discovery, nor did he indicate why he did not raise them in his prior four PCRA petitions.

On January 5, 2011, Petitioner returned to this Court and filed a motion to lift the stay and to amend his petition. These requests were granted and the case was reopened on February 4, 2011. Petitioner filed a supplement to his petition on March 2, 2011, which was answered by the Respondents on July 8, 2011.

## II.     Timeliness of the Petition

This proceeding is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").[9] Pursuant to the AEDPA, Congress imposed a one-year limitations period applicable to state prisoners, which provides as follows:

> (d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly

---

[9]       Because Petitioner filed his federal habeas petition in 2008, after the effective date of the AEDPA, the Court must apply the standards set forth in the AEDPA to his claims for federal habeas relief. *See* <u>Werts v. Vaughn</u>, 228 F.3d 178, 195 (3d Cir. 2000) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997)).

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

The Third Circuit Court of Appeals has held that the statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. <u>Fielder v. Varner</u>, 379 F.3d 113, 122 (3d Cir. 2004). Thus, in analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under § 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to § 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. *See*, *e.g.*, <u>Nara v. Frank</u>, No. 99-5, 2004 U.S. Dist. LEXIS 6508, 2004 WL 825858, at *3 (W.D. Pa. Mar. 10, 2004) (Caiazza, C.Mag.J.).

**A.  Trigger Date**

In the instant case, Petitioner's judgment of sentence became final on February 13, 2002, thirty days after his post-sentence motions were denied by the trial court. Petitioner raises twenty-three claims in his habeas petition and for twenty-two of those claims it is clear that

February 13, 2002 is the "trigger" date for his one-year statute of limitations under the AEDPA. Therefore, pursuant to section 2244(d)(1)(A), Petitioner was required to file his federal habeas corpus petition by February 13, 2003. For Petitioner's remaining claim, that his counsel was ineffective for failing to file an appeal, the "trigger" date appears to be February 1, 2005, the day Petitioner allegedly learned that Attorney Valasek never filed an appeal. Therefore, pursuant to section 2244(d)(1)(D), he was required to file his federal habeas petition by February 1, 2006. However, Petitioner did not file the within petition until April 1, 2008. Therefore, it is clear that all of the claims in the petition are untimely.

## B. Statutory Tolling

In accordance with § 2244(d)(2), Petitioner's one-year limitations period was tolled during the time any "properly filed" applications for post-conviction or collateral relief were pending in the state court.

The Third Circuit Court of Appeals recently addressed what it means when a pleading is "properly filed." In Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80 (3d Cir. 2013), the court stated:

> A prisoner's application for state collateral review is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings[,]" Artuz v. Bennett, 531 U.S. 4, 8 (2000) (emphasis omitted), including "time limits, no matter their form," Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005). Thus, if a state court determines that an application is untimely, "'that [is] the end of the matter' for purposes of" statutory tolling of AEDPA's limitation period, id. at 414 (quoting Carey v. Saffold, 536 U.S. 214, 226 (2002)), "regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits[,]" Carey, 536 U.S. at 226. But if a state court fails to rule clearly on the timeliness of an application, a federal court "must . . . determine what the state courts would have held in respect to timeliness." Evans v. Chavis, 546 U.S. 189, 198 (2006).

Jenkins, 705 F.3d at 85-86.

For the twenty-two claims referenced above, Petitioner's one-year limitations period commenced on February 13, 2002, and ran for 137 days until Petitioner filed his first PCRA petition on July 1, 2002. On that day, the limitations period was tolled until the first PCRA proceedings concluded on May 8, 2004. This was the last day Petitioner could have filed a petition for allowance of appeal to the Pennsylvania Supreme Court.

Petitioner's clock started to run again on May 9, 2004, and ran for 93 days until he filed his second PCRA petition on August 10, 2004. However, because this petition was dismissed as untimely, it was not a "properly filed" application for post-conviction relief and did not serve to toll any amount of time that was left of Petitioner's one-year limitations period. The one-year time period for filing his federal habeas petition thus expired on December 23, 2004, during which time Petitioner's second PCRA proceedings were still pending.

This Court acknowledges that the PCRA court appointed Petitioner counsel for his second PCRA proceedings and that Judge Blahovec even indicated that he was going to rule on the merits of the petition rather than find it untimely. Nevertheless, he ultimately ruled that it was untimely and that Petitioner did not meet any of the exceptions to the time requirements of the PCRA. Notably, even if he had ruled on the merits of the petition, it is likely that Petitioner's one-year limitations period would have eventually expired before he filed his federal habeas petition since he continued to pursue relief in state court through subsequent PCRA petitions that were also found to be untimely.[10] Because these were not "properly filed" petitions, the pendency of those proceedings would not have tolled the statute of limitations. Therefore, the twenty-two claims referenced above are untimely even applying statutory tolling.

---

[10] Specifically, the PCRA court ruled that Petitioner's fourth and fifth PCRA petitions were untimely and the Superior Court affirmed this ruling on appeal.

For Petitioner's claim of ineffective assistance of counsel for failing to file an appeal, the one-year limitations period commenced on February 1, 2005. During this time, Petitioner was in the middle of his second PCRA proceedings. However, for the reasons previously stated, his second PCRA petition did not toll the statute of limitations because it was not a "properly filed" petition. Petitioner filed his third PCRA petition on April 11, 2005. While Petitioner could argue that his third PCRA petition was "properly filed" because the PCRA court granted relief and reinstated his direct appeal rights, the Superior Court later found that the petition was untimely and that the PCRA court did not have jurisdiction to grant Petitioner relief. Essentially, Petitioner's time for filing a federal habeas corpus petition expired on February 1, 2006. Obviously, Petitioner was still seeking relief in the state court on this day. Thus, this claim is untimely as well, unless Petitioner can establish equitable tolling.

### C. Equitable Tolling

Finally, the Court must determine whether Petitioner is entitled to any equitable tolling. In Holland v. Florida, 130 S. Ct. 2549 (2010), the United States Supreme Court affirmed the availability of equitable tolling of AEDPA's one-year statute of limitations under appropriate circumstances. In its opinion, the Supreme Court first underscored that the one-year statute of limitations in AEDPA was not jurisdictional, and "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run.'" Id. at 2560 (quoting Day v. McDonough, 547 U.S. 198, 208 (2006)). Given that habeas corpus is, at its heart, an equitable form of relief, and with no well-defined congressional intent to the contrary, the Supreme Court asserted that it is proper, under the principles of equity, to toll the statutory one-year period for filing a petition under § 2254 in certain cases. Holland, 130 S. Ct. at 2561-62. In order for a delay in filing a habeas petition to qualify for equitable tolling, a petitioner must show "'(1) that he has been pursuing his

rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Id. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

The diligence required for equitable tolling is reasonable diligence, not maximum, extreme, or exceptional diligence. Holland, 130 S. Ct. at 2565. However, "[t]his obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period [the petitioner] is exhausting state court remedies as well." LaCava v. Kyler, 398 F.3d 69, 74 (3d Cir. 2004) (citing Jones v. Morton, 195 F.3d 153, 160 (3d Cir. 1999)). Reasonable diligence is examined under a subjective test, and it must be considered in light of the particular circumstances of the case. See Ross v. Varano, 712 F.3d 784, 798 (3d Cir. 2013); Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004) ("Due diligence does not require the maximum feasible diligence, but it does require diligence in the circumstances.") (internal quotation marks and citation omitted). The Third Circuit has said that a diligent prisoner is one who "did what he reasonably thought was necessary to preserve his rights . . . based on information he received[.]" Munchinski v. Wilson, 694 F.3d 308, 331 (3d Cir. 2012) (quoting Holmes v. Spencer, 685 F.3d 51, 65 (1st Cir. 2012)).

A petitioner must also demonstrate extraordinary circumstances that warrant equitable tolling. The Third Circuit has emphasized that "[e]quitable tolling is appropriate when 'the principles of equity would make the rigid application of a limitation period unfair[.]'" LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005) (quoting Miller, 145 F.3d at 618). Additionally, it should be applied only where it is "demanded by sound legal principles as well as the interests of justice." LaCava, 398 F.3d at 275 (internal quotes and citations omitted). Extraordinary circumstances have been found only where: (a) the respondent has actively misled the petitioner, (b) the petitioner has in some extraordinary way been prevented from asserting his rights, (c) the

petitioner has timely asserted his rights mistakenly in the wrong forum, or (d) the court itself has misled a party regarding the steps that the party needs to take to preserve a claim. *See* Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005). "Mere excusable neglect is not sufficient." Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 619 (3d Cir. 1998).

Petitioner argues that AEDPA's statute of limitations should be equitably tolled during the pendency of his state court proceedings because he was diligent in pursuing his rights after he discovered that Attorney Valasek never filed an appeal as he was led to believe by the entry on the state court's docket, which stated that his appeal lacked merit.[11] Although Respondents maintain that Petitioner is not entitled to any amount of equitable tolling, they submit that his habeas petition would still be untimely even allowing for equitable tolling during his second and third PCRA proceedings and the direct appeal proceedings that were later quashed by the Superior Court. They contend that he is not entitled to equitable tolling for his fourth PCRA proceedings because at that point he should have filed his federal habeas petition instead of continuing to pursue relief in the state court. Upon consideration of the procedural history of this case, and the applicable law, the Court finds that Petitioner is entitled to equitable tolling on his claim of ineffective assistance of counsel for failing to file an appeal, and, as such, this claim will be considered timely by this Court.

At his sentencing proceedings held on September 12, 2001, Petitioner made an oral motion for the appointment of new counsel for purposes of appeal as did his co-defendant. In an

---

[11]     The Court recognizes that for Petitioner's version of events to be true, it must be assumed that (1) he never received a copy of the trial court's order denying his post-sentence motions in January 2002; (2) that in May 2002 he wrote to the Westmoreland County Clerk of Court requesting to know the status of his case even though the docket sheet does not reflect that any correspondence was received from him in May 2002; (3) that the Clerk of Court in fact sent him a copy of the docket sheet; and (4) that he was reasonably misled by the entry on the docket sheet, which stated that his appeal lacked merit when in actuality the docket entry referred to the denial of his post-sentence motions.

effort to preserve the defendants' rights, the sentencing court ordered that trial counsel for each defendant file post-sentence motions at which time he would appoint new counsel and allow new counsel time to file supplemental post-sentence motions. In Petitioner's case, Attorney Valasek was appointed as new counsel and the record reveals that Attorney Valasek never contacted Petitioner despite Petitioner's attempts to contact him and repeated requests that he file an appeal. According to Petitioner, he was misled that an appeal had been filed on his behalf when he requested a copy of the court's docket sheet in May 2002 and saw an entry that stated his appeal lacked merit. While the docket entry refers to the denial of the original post-sentence motions, and not an appeal, Petitioner was told by prison law library staff that the entry meant that his appeal was denied. Admittedly, this Court can see how the docket entry would be confusing to a reasonable person.

Counsel's failure to file an appeal was allegedly not discovered by Petitioner until February 1, 2005. On this day, Petitioner was in court for a hearing on his second PCRA petition. Attorney Smarto had been appointed for purposes of those proceedings. Two witnesses were called to testify: Attorney Valasek, and, Petitioner's trial counsel, Attorney Feliciani. Petitioner maintains that Attorney Valasek was questioned as to his representation of Petitioner on appeal but the transcript of that hearing does not reflect such testimony. In fact, Attorney Valasek only testified as to his representation of Petitioner in his first PCRA proceedings. Petitioner also maintains that when Attorney Smarto discovered that Attorney Valasek had never filed an appeal she was advised by Judge Blahovec to raise the ineffective assistance of counsel claim in a third PCRA petition. Again, the transcript does not reflect this conversation, or any conversation involving Petitioner's appeal or lack thereof.

Allegedly acting pursuant to Judge Blahovec's instructions, Petitioner filed a third PCRA petition. However, the petition was brief, and, without explanation, Petitioner simply alleged that Attorney Valasek did not file an appeal on his behalf. A hearing on the petition was held on August 3, 2005, and the transcript from that hearing indicates that a conversation regarding Attorney Valasek's failure to file an appeal did in fact occur at the previous hearing held on February 1, 2005, as Petitioner alleges. Specifically, Attorney Smarto stated, "From the testimony that was elicited back in February, as you recall, Ron Valasek testified that he did not file a No Merit Letter, nor did he file an appeal with the Superior Court." Judge Blahovec later stated that "even though it's late, the testimony was that Mr. Valasek just didn't do - - that's the way I recall the testimony, the way Attorney Smarto said." Therefore, even though there is nothing in the February 1, 2005 hearing transcript to support Petitioner's allegations regarding what occurred on that day, his allegations are supported by the transcript from the hearing held on August 3, 2005. Presumably, whatever conversations took place between Attorney Valasek, Attorney Smarto and Judge Blahovec at the hearing held on February 1, 2005, must have occurred off the record. Following what was a very brief hearing, Petitioner was granted PCRA relief and his appeal rights were reinstated *nunc pro tunc*. What followed thereafter is a very long and unfortunate chain of events that essentially trapped Petitioner in a procedural nightmare that has barred him from obtaining the requested relief in state court.

In this Court's opinion, Petitioner's appeal was erroneously quashed by the Superior Court as his third PCRA petition was not untimely. Recognizing that his third PCRA petition was timely because he had met an exception to the PCRA time requirement, Petitioner filed his fourth PCRA petition requesting the same relief – that his appeal rights be reinstated because of Attorney Valasek's ineffectiveness. Unfortunately, this petition was also dismissed as untimely.

While the instant proceedings were stayed, Petitioner continued to pursue relief in state court. He filed a petition for leave to appeal *nunc pro tunc*, which the Superior Court denied without prejudice to seek or to continue to seek the requested relief in the Court of Common Pleas. However, when Petitioner returned to the Court of Common Pleas to seek the requested relief, the PCRA court ruled that it could not grant it to him because it had already done so and that order was vacated by the Superior Court when it quashed Petitioner's direct appeal that it had reinstated. Notably the PCRA court stated that it believed that Petitioner's direct appeal rights should be reinstated, but, due to the procedural history of the case, it was not able to grant him the requested relief. Hence, Petitioner's procedural predicament.

To this Court, it appears as though the Superior Court was incorrect when it vacated the PCRA court's order granting Petitioner's third PCRA petition. In quashing Petitioner's direct appeal, the Superior Court relied heavily on the fact that Petitioner alleged that his counsel was ineffective for failing to file a direct appeal but he did not support the claim with any factual allegations and did not specifically invoke an exception to the PCRA time requirement.[12] It is reasonable to believe that Petitioner did not do so because the factual predicate underlying the claim was discovered at a hearing that occurred before the PCRA court and Judge Blahovec specifically instructed Petitioner to raise the claim in a third petition. In this case, the PCRA court had direct knowledge of when the factual predicate underlying the claim was discovered. Therefore, it is reasonable to believe that there was no need to specifically invoke any timeliness exception. The basis upon which the PCRA court granted relief is clear and supported by the record, specifically the transcript from the hearing that occurred on August 3, 2005.

---

[12] *See* FN 5, *supra*.

Although technically sixty-eight days elapsed before Petitioner raised the claim, under Pennsylvania law the sixty-day time limit did not start to run until the time for filing an appeal from the dismissal of Petitioner's second PCRA petition elapsed, or, at the very least, until the PCRA court dismissed his second PCRA petition on March 22, 2005. *See* <u>Commonwealth v. Lark</u>, 746 A.2d 585 (Pa. 2000) (The 60-day period of time for asserting claims based on new evidence pursuant to 42 Pa.C.S.A. § 9545(b)(2) starts to run on the date of the order dismissing the initial appeal "because this is the first 'date the claim could have been presented.'") Assuming that the Superior Court ruled that the third PCRA petition was untimely because it was filed sixty-eight days after discovery, the court did not properly toll the time during the pendency of Petitioner's second PCRA proceedings. In fact, the sixty-day time limit did not even start to run because Petitioner's second PCRA proceedings concluded on April 21, 2005, after he had already filed the third PCRA petition. As such, Petitioner timely filed the petition and the PCRA court properly granted him relief by reinstating his direct appeal rights. It is unclear why the Superior Court disagreed. In fact, on appeal from Petitioner's fourth PCRA petition the Superior Court specifically stated that he did not file his third PCRA petition within sixty-days of February 1, 2005. This is simply incorrect.

That Petitioner diligently pursued his claim through the state court system is self-evident and it does not appear that Petitioner will ever obtain the relief to which he is entitled by pursuing this claim any further in state court. Giving him the benefit of the doubt, and the fact that the rule relied upon by the Superior Court in denying him relief was erroneously applied, equitable tolling of the one-year statute of limitations is appropriate in this situation.

## III.    Petitioner's Claims

As noted in the beginning of this Opinion, Petitioner raises twenty-three claims in his habeas petition: seven claims related to the case involving the Piper fire, ten claims related to the case involving the Auto Haven fire, five claims related to the case involving the Loveridge fire, and the claim that Attorney Valasek was ineffective for failing to file an appeal. For the following reasons, the Court finds that Petitioner is entitled to relief on his claim regarding Attorney Valasek's ineffectiveness for failing to file an appeal and will grant him a conditional writ of habeas corpus ordering that he must be released from custody if his direct appeal rights are not reinstated *nunc pro tunc* within sixty-days. However, granting this relief renders the remaining twenty-two claims in the petition unexhausted; therefore, those claims will be dismissed without prejudice so that Petitioner may pursue them on appeal and through post-conviction proceedings in state court.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that criminal defendants are entitled to "reasonably effective assistance" of counsel under the Sixth and Fourteenth Amendments. Id. at 687. To establish ineffectiveness under Strickland, a defendant must demonstrate that (1) counsel's legal representation "fell below an objective standard of reasonableness," and (2) the unreasonable representation prejudiced the defendant. Id. at 694.

It has long been established that it is professionally unreasonable for a lawyer to ignore a defendant's specific instruction to file a notice of appeal. Rodriguez v. United States, 395 U.S. 327 (1969). In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court held that if a defendant has not instructed an attorney to file an appeal, "the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." Id. at 478. Flores-Ortega defines consulting as "advising the defendant about the advantages and

disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 478.

The inquiry under Flores-Ortega does not, however, end the determination that counsel did not consult with the defendant about filing a notice of appeal. The Court in Flores-Ortega declined to adopt a bright-line rule that counsel always has a duty to consult with a defendant about filing an appeal. Id. at 481. Rather, the Court held that where counsel did not consult with the defendant about filing an appeal, counsel's performance is objectively unreasonable if "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that a particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

In the present case, not only was Attorney Valasek appointed for the very purpose of filing supplemental post-sentence motions and an appeal but the record also supports the fact that Petitioner desired to appeal. In fact, he specifically requested Attorney Valasek to raise certain claims in his appeal. In a letter dated November 7, 2001, Petitioner informed Attorney Valasek about several issues that he was concerned with and reminded him that he only had twenty days to file supplemental post-sentence motions and thirty days to file an appeal thereafter. Petitioner wrote to Judge Blahovec on January 23, 2002, asking what he could do because Attorney Valasek would not respond to his letters and his family's attempts to contact him by phone were also unsuccessful. On January 28, 2002, Judge Blahovec forwarded Petitioner's letter to Attorney Valasek asking that he contact Petitioner as soon as possible. There is no indication that this ever occurred.[14]

---

[14] The transcript of the hearing held before the PCRA court on February 1, 2005 reveals that Attorney Valasek may have met with Petitioner in March 2002 but on an unrelated matter.

Under <u>Flores-Ortega</u>, a defendant has shown prejudice "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken." 528 U.S. at 484. Because counsel's unreasonable failure to file a notice of appeal results in the forfeiture of the proceeding itself, a defendant need not "demonstrate that his hypothetical appeal might have had merit." <u>Id</u>. at 483, 486. Rather, the defendant need only show that "but for counsel's deficient conduct, he would have appealed." <u>Id</u>. Given that he specifically requested new counsel for appeal, that he still maintains his innocence, and that he has been persistent in his efforts at challenging his conviction, there is no question that Petitioner would have appealed but for Attorney Valasek's failure to file it on his behalf.

**IV.     Conclusion**

In failing to consult with Petitioner about the possibility of filing an appeal, even though he knew or should have known that Petitioner desired to appeal, Attorney Valasek failed to provide him with objectively reasonable legal representation. Because Attorney Valasek's deficient performance deprived Petitioner of an appeal that he otherwise would have taken, Petitioner is entitled to habeas corpus relief in the form of reinstatement of his direct appeal rights *nunc pro tunc*. His remaining claims are therefore unexhausted. An appropriate Order will issue separately.

Dated:  January 8, 2014

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

Cc:  Donald W. Queer
     ET-9697
     SCI Houtzdale
     P.O. Box 1000

21

Houtzdale, PA  16698-1000
*Via U.S. Postal Mail*

Counsel of Record
*Via ECF Electronic Mail*